Your case for argument today is GEFT Outdoor v. Evansville. Mr. Blaiklock, may it please the court, my name is Rich Blaiklock on behalf of GEFT asking that the court reverse the district court's entry of summary judgment and remand the case back for a trial on damages. I'd like to make two points today. First, under the pretext of an adverse variance decision, GEFT was denied a variance in Evansville based on who it is, a competitor of another billboard company, and what it may have said, displaying advertising that may be contrary to a local business shoe carnival. That happened because Evansville's variance scheme allows too much discretion, and it's that type of discretion and the risk of censorship that prior restraint doctrine is designed to prevent. Secondly, because Evansville's variance scheme is unconstitutional as applied to GEFT, GEFT should be entitled to damages for Evansville's successful effort at stopping that billboard. In Indiana, if you want to zone land, you have to have a variance procedure. One cannot exist without the other. This court said in GEFT v. Monroe County, quote, zoning and variances go hand in glove. Zoning would be unworkable without the flexibility provided by variance, unquote. When GEFT tried to erect the billboard, Evansville did not have a constitutional variance procedure in place as it relates to speech, which means that GEFT had no right to regulate, I'm sorry, that Evansville had no right to regulate the GEFT billboard at the time the billboard could have been erected. Unfortunately, the lease expired, and so we're left with a damages claim. As to the first point, in GEFT v. Monroe County, this court expressed its preference for deciding these types of issues on an as-applied basis, and we believe this case presents the facts for this court to do just that. Evansville's BZA's open-ended, undefined criteria that granted the ability to hide behind those we believe are improper, which is what the court, the district court ruled the first time, said that those provisions allowed are subject to different interpretations. We think there's ample evidence in the record to conclude that it did just that. We found no other examples of Evansville BZA denying would-be speakers the right to speak under similar situations as presented by GEFT. The executive director of Evansville was unaware of any. The only difference between the four billboards that received variances similar to those that we did not get, and us, is the speaker and the possible message of the speaker, as evidenced by what was presented at the BZA hearing. As mentioned, we've identified four other examples where the BZA granted similar variances to billboard companies. More specifically, Costco and Shoe Carnival flexed their corporate muscles in Evansville and reminded the BZA how much money they had invested in the community, how many employees they have in Evansville, and how much they contribute in taxes. Shoe Carnival even suggested it may not expand its footprint in Evansville if this billboard went up. One of the BZA members then, at the end, thanks, it was exactly unclear who, but clearly to one of them, for everything you've done. Evansville did not want to upset its good corporate citizens and allow GEFT the right to speak in the way that it had provided to four other similarly situated billboard companies. Shoe Carnival then expressed its concern that GEFT would advertise for competitors right by it. My point here is, this is exactly the type of speech that the government should protect and not quash. What if Shoe Carnival was charging ridiculous prices? The BZA has now said, the competitor can't put a board up in front of Shoe Carnival and look at that particular speaker and what it's doing. Lastly, one of GEFT's competitors in Evansville spoke out about how the billboard would, quote, weaken its product. Again, what that results in is favoring those that are already there and what they're saying versus GEFT and what it wanted to say. None of that is part of the statutory variance criteria, and all of the other similar variances were granted. We believe this is exactly what an as-applied challenge is designed to protect against, preferring one speaker over another and one messenger over another. The issue, of course, is we'll never get testimony where somebody admits that that's exactly what happened. We're prevented from doing that under our research because the BZA is a quasi-judicial branch and we can't depose them and ask them exactly why they made those decisions, which is why, in the prior restraint context, that we are asking for relief from the district court and obviously now from this court. We believe that the district court erred in concluding that we did not have an as-applied challenge on the variance. The second point I would like to make is that we don't believe that in Evansville, as applied to GEFT, that Evansville can zone property in Indiana without a constitutional variance process, which, as I've just outlined, we don't believe is the case. Indiana statutory law requires that if a municipality is going to regulate property, it has to have a variance process. It's what's called an escape file, and the variance provisions are enabling statutes. The state of Indiana, through its law, has preempted the field of zoning through that variance provision. So Indiana Code 3674901A says as part of its zoning ordinance, the legislative body shall establish a BZA. It shall adopt rules, and then later in the code, it says that it shall approve or deny variances. And the Strange v. BZA case, which we've cited in here, talks about how it is an enabling statute and that zoning ordinances, local zoning ordinances, may not override state law and policy. To be held constitutional, zoning laws must have the safety valve, and again, it preempts the entire field. We think the International Outdoor v. City of Troy case presents a similar situation here, or at least presents a similar law here, which is the variance is not independent from other provisions of the ordinance. Again, they go hand in glove. That court said that they are inextricably linked by providing a way of relaxing the very restrictions imposed by the sign ordinance, and it held that in the context of standing in that case. This court in Monroe County said they go hand in glove. So it's our position, if the variance procedure is unconstitutional as it relates to speech, then you have a situation in Evansville where somebody who wants to build a pool too close to the property line has a process that is fine, legal, to go through. Someone who wants to erect a billboard to exercise a constitutional right to speak does not. This cannot be the intent of the legislature who passed the sign code. Do you have any decision of the Indiana Supreme Court that supports you? No, it's the Strange case. I think it's a court of appeals decision that talks about that, but it did cite, without contradictory law, the proposition that zoning and variance go hand in glove, and you can't have one without the other. And so, touching a little bit on severance, a severance clause in an ordinance can't get around the fact that state law, which allows you to zone in the first place, requires both the variance scheme in order to allow you to zone at all. We think that elevates hormones or substance, and it would elevate the local ordinance over the United States Constitution as it relates to speech, and the Indiana State Legislature as it relates to the process for controlling the use of land. Lastly, it's our position that that variance scheme is unconstitutional. As I mentioned, we think this case mirrors, in some respects, the International Outdoor v. City of Troy case, which this court distinguished under the facts of Geff v. Monroe, but unlike that case, Evansville requires permits for signs. At the time we argued the Geff v. Monroe County case, the court had rendered that unconstitutional, and at that point, Monroe County was content not to have a permit. So Evansville still requires permits, and its permit provisions are content-based, because they have to make a decision if you need a permit, whether or not it's commercial speech or not, as acknowledged by their director of zoning. Also, many of the exceptions here are content-based, which the district court in its first order acknowledged that they are content-based. There are things relating to garage sales, real estate signs, and so forth, which, as the court in City of Troy says, increase the risks that the BZA would discriminate based on content or the speaker. And then next, the criteria that BZA considers is replete with discretionary terms that are not defined. Injurious to the morals and general welfare of the community, use and value of the adjacent area will not be affected in a, quote, substantially adverse manner, and there's an internal memo from Evansville that we put in the record, where they even acknowledge they're not exactly sure what that means. Practical difficulties were created for the, actually, it's the practical difficulties created for the property. It's that risk that those criteria will be misused that is the constitutional infirmity that is present here, as applied to Geft. It's been used as a pretext for preventing disfavored speech, a competitor of a big employer, and disfavored speaker, Geft, over, I'm sorry, Lamar over Geft. The criteria for rendering the variance procedure, we believe, are unconstitutional as applied to Geft, and the case should be remanded back down. In conclusion, it's for the government to properly regulate speech. It is not properly done so here. We often, in these cases, confront people saying, well, you're just trying to find a gotcha situation. I would respectfully submit that when there's such a fundamental right as free speech, the question should be reframed from the government's vantage point. Did the government properly regulate speech? And here, as applied to Geft, we believe it did not, and there are consequences for that, and unfortunately, it's not that we were allowed to speak, it's in this case that we obtained damages. So I'll reserve my remaining time unless the court has any questions. Thank you. Mr. Zavarin. Yes. Good morning, Your Honors. Philip Zavarin for the City of Evansville. I wanted to reframe some of the issues that the attorney for the FOMs presented, and in particular, I found it interesting that the thrust of the argument and the crux of the argument is that Geft was treated differently from other applicants or other companies or entities or people who were similarly situated. And I think they have a huge preservation problem in this case, because if you look at the supplemental complaint, which is the operative complaint in this case, there's three causes of action. The first one has to do with the permits and the exemptions, and as the district court found in this case, Geft has no standing because it was not seeking to have any of the exemptions set aside that were content-based that would affect its ability to have the billboard. The second cause of action is that the procedural safeguards, which includes the variance provisions, are an unconstitutional prior restraint, and they say there that it allows too much discretion. That is a facial challenge. The third cause of action is challenging the BZA decision. That is the as-applied challenge, and I want to point out very clearly that the third cause of action was dismissed voluntarily by Geft. So there's nothing in the supplemental complaint that sets forth the cause of action on which they are now seeking to have the district court reversed, and even if it had, I would say, a summary judgment motion, there is no argument that they're making today before this court in terms of differential treatment, and I would call the court's attention to the reply brief as document 171 in the district court's record of pages 10 and 11, where they point out that they're talking about these other instances in order to show that the, or support their argument that the variance allows too much discretion, that it's, it allows the city to pick and choose, but on the bottom of page two, they say that this evidence is material because it's a circumstantial evidence of the lack of objective criteria, which is a facial challenge, and then when we get to the district court's opinion, we see there's nothing in there about what they are arguing today, very clearly because it was not presented. Then we get to the opening brief before this court, and the arguments there is a facial challenge, both to the permitting, which Mr. Blakelock did not present at the argument today, so we rely on the briefs, but also a facial challenge to the ordinance, and then seeking a severance. You don't have a severance unless you have the facial challenge, because if it's as applied, then you don't have it struck down. It isn't until after the opening brief is filed in this case that this court decided the Monroe County case, and Monroe County case very clearly sets forth its reasoning that the criteria for the variance, which are qualitatively and conceptually indistinguishable from the variance provisions in this case, are not overly broad. They're sufficiently narrow and objective, and if you look at, compare the variance provisions in the ordinance in Evansville with the ones in Monroe County, for example, the very first one, the approval will not be injurious to the public health, safety, and general welfare of the community. That's exactly one that Mr. Blakelock just pointed out. Well, in Monroe County, they said that that is permissible. The point here is that variances, by definition, are discretionary, because it's allowing for variations, quite literally where the word variance comes from, from what the otherwise would be a rote application of the sign standards, and the Thomas versus Chicago Park case decided by the Supreme Court says that variances promote speech, having variances promote speech, when the purpose of having the restrictions in the sign ordinance are not met by the particular circumstances, whether it's the property or the applicant or what have you, and they also say in that case, the Thomas versus Chicago Park case, that it is constitutional in terms of the discretion, where it allows for meaningful judicial review, and again, I go back to count three of the supplemental complaint, where one of the grounds on which they say that the BZA, or in which they're challenging the BZA opinion, is contrary to Geff's First Amendment rights. It's right there, and it was dismissed, and again, if the second count, which is an unconstitutional prior restraint, when you get to the point of applying the variance, you're not arguing that it's an unconstitutional prior restraint. You're saying that it was an abuse of discretion, which this court said very clearly, again, in Monroe County, when saying that the, that variances by definition are discretion. It says, as long as the laws at issue did not chill speech, we should prefer that any abuse of discretion concerns be resolved through as-applied challenges. It isn't until the reply brief by the appellant in this case that we have the argument presented to this court today about the differential treatment. I can go into the differential treatment, but again, I want to emphasize their position that quite clearly was not preserved. The, Geff acquired the lease on property that was along I-69, major thoroughfare in Evansville, and there's reference in the attacker to this being the gateway to Evansville. There was already a billboard on that property. They sought a variance in order to exceed the size and the height restrictions in the sign ordinance, as well as the spacing from the existing billboard. So it's almost as if, I mean, there's the adage about you can't move next to an airport and complain about the noise. Well, they acquired a lease on property where they knew they were going to have to get a variance and then complained about the sign standards and the variance not being granted, when there's plenty of properties within the city of Evansville where they could have gotten their billboard, save for the size and height restrictions, which are not challenging in this case as far as being inappropriate. Mr. Blakelock has cherry-picked different things about what people have said. Of course, people are going to come before the Board of Zoning Appeals and say things that are in their self-interest. That doesn't mean that that then is the Board of Zoning Appeals making a decision on that ground, but since he mentioned a few, Shoe Carnival and Costco, they have large headquarters there, and their concern was that another billboard, a second billboard on the property, would impair the visibility from I-69. The competitor, Lamar, I would point out that they, evidence of the record, they opposed another variance for another company at Ruston Lane, which was one that was granted. The Ruston Lane was nine miles away, it was in an industrial area, there were no adjoining property owners that were complaining, and then there's another property owner next to this one, Promenade, that talked about the space limitation, the spacing limitation, between billboards being a legislative compromise to reduce blight that they should follow the legislative compromise. But none of these arguments, none of them, not one of them was presented to the district court in terms of, well, we were treated unfairly compared to someone else that was similarly situated. And again, this is an abuse of discretion standard. You can have the same facts or the same property, and yet there might be reasons why it's within the abuse of discretion. The same as this reviewing court, reviewing maybe evidentiary decisions or other decisions by a trial court. It's not like there's one answer to those. And I would also point out that even as an as-applied challenge, it is not, they have not met that standard. And I would point the court to the H.H. Indianapolis case, which is cited by this court in Monroe County. That case, briefly stated, involved an adult bookstore that wanted to have a variance to have their business in a certain location. The court said that, well, no, that was not a violation even as applied because the city of Indianapolis did not prevent the business from speaking because the adult bookstore could operate in other places in the city. The same thing that we have here. It's just limiting where they could speak, not what they could say or how they could speak. And I might point out the Indianapolis case says very clearly, the city has simply told H.H. that it cannot operate in C3 district while also providing numerous other avenues for speech. So this only resulted in the city of Evansville saying you can't have your billboard here because of the size and height. We're not going to give you those variations and also the spacing from other billboards. So I would say even if they had made an as-applied challenge, they have not met it here. An as-applied challenge doesn't mean I have an absolute right to speak how I want, where I want, and when I want. No, it means you can have reasonable restrictions and as long as you have variances that are then allowed for meaningful judicial review based on Monroe County, I don't see how this court could find that these terms are unduly broad or not sufficiently objective. I did want to comment on the variance in terms of the argument for severance. The Indiana statute 36-7-4-918.5 is the one that talks about variances for developmental standards. What this section says is that the Board of Zoning Appeals shall approve or deny variances and that it gives criteria. It also says the Board's approval. I'm sorry. If in fact the variance was determined to be unconstitutional on its face, which again would be a necessary predicate to striking the or finding that the variance procedure itself or the provisions themselves, excuse me, is unconstitutional and it can be severed because you still have the terms and the provisions in the statute that would apply. The final thing I'd like to say is that in reality what they're making is not an as-applied challenge and again it hasn't been preserved, but they're not making one even now because the HH Indianapolis case talks about what is required for an as-applied challenge and how if the city is not preventing you from speaking based on the enforcement of these sign standards, then you can speak somewhere, just not here and in this manner. Typical time, manner, place, restriction, which is perfectly constitutional, but I would say that what they are presenting instead is more of an equal protection challenge. What they're saying is that I was treated unfairly as compared to others. That doesn't be a claim, that even if you can speak somewhere else, that you're letting me, you're letting them speak here in the same manner, in the same time that I wanted to speak. But that is a selective enforcement or selective prosecution claim, which would require a finding of invidious discrimination. For that I would cite the court to Van Dyck versus Village of Alsip and that is not in the briefing, so I'll just give you the cite. 819 Federal Appendix 431 decided by the Seventh Circuit in 2020. It's not even precedential. I'm sorry? It's not even precedential. Well, I understand that, but I have searched and searched to see, is there a claim under the First Amendment based on being treated differently? And the only thing that I found is that case, and again, it's not, the H.H. Indianapolis case talks about the as a by-counsel. No, it can't be cited as a precedent. I agree with you, Your Honor. I was just, I was just, I was looking for a standard to grab onto and that was what I found as far as in the circuit. So, that's why I called it to the court's attention, but certainly it's not binding, I agree with that. Unless there's any questions, I would ask that the district court's decision be affirmed. Thank you, Counselor. Anything further, Mr. Blakelock? Certainly. May it please the court. On the preservation issue, we cited in our brief that we asserted an as-applied challenge as part of our declaratory relief at docket 59, paragraph 78. I do want to just touch briefly on facial standing and why we're different than Monroe County. In that case, and understanding the Ligon Guth case that has been cited by the district court, the Ligon Guth case did not involve challenge to a variance provision, which we have. We also have, like the Ligon Guth case, we have content exemptions, but the City of Troy case said that we have a remedy around those time, place, and manner restrictions through the variance process, and our point here is that that process itself is unconstitutional. We think, following the Ligon Guth case, that we have standing. The last, the final point, briefly, is that we'll never know the grounds of exactly why the decision was made, which is the problem. They have to be narrow, defined, objective criteria that the variance, that the BZA is applying, and because they weren't, they can use those provisions, those broad provisions, as pretexts. Why must they be objective? Because otherwise... Criteria were not objective in Thomas against the Chicago Park District, but they, the one, I mean, they all, I think they all were except for one potentially about danger, and danger relates to physical activity as opposed to speech. It relates to something, but it's not objective. There's no quantitative way of figuring this out. Danger? There's no quantitative way. They didn't say, for example, that your demonstration will be okay if we think that fewer than five people will die, but bad if more than five people will die, right? It's not quantitative. And the Supreme Court said, but it's still okay. You know, it's basically the best we can do. Why isn't that equally true of the Evansville variance procedure? Well, a couple things. The district court, the first time around, acknowledged that there is a material breadth of those provisions. They're not narrow at all, and when you're dealing with, there's three different provisions as opposed to one, and then you also, in Evansville, unlike in the other cases like Leibengate, you have content-based exemptions, which puts this into strict scrutiny, and so I distinguish the Thomas case on that as well as the fact that that was on a public land and this is on private land. Unless the court has anything else, I would ask that this be reversed and set for damages. Thank you, counsel. The case is taken under advisement.